UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

ANTHONY BRIAN MALLGREN,

                  Plaintiff,                  **MEMORANDUM & ORDER**
          v.                                        14-CV-2188 (MKB)

PAGE BURKHOLDER and
JOHN DOES,

                  Defendants,

---------------------------------------------------------------

ANTHONY BRIAN MALLGREN,

                  Plaintiff,                  14-CV-2189 (MKB)
          v.

NEW YORK STATE OFFICE OF THE
ATTORNEY GENERAL, RICHMOND
UNIVERSITY MEDICAL CENTER and
JOHN DOES,

                  Defendants,

---------------------------------------------------------------

ANTHONY BRIAN MALLGREN,

                    Plaintiff,                  14-CV-2709 (MKB)
          v.

PAGE BURKHOLDER,

                  Defendant,

---------------------------------------------------------------

---

ANTHONY BRIAN MALLGREN,

                Plaintiff,        14-CV-2735 (MKB)

    v.

NIGHAT Y. SINDHU,

               Defendant,

---

ANTHONY BRIAN MALLGREN,

                Plaintiff,        14-CV-2736 (MKB)

    v.

GARY CLEMUK,

                Defendant,

---

ANTHONY BRIAN MALLGREN,

                Plaintiff,        14-CV-3635 (MKB)

    v.

SHARON GREENE,

                Defendant.

---

MARGO K. BRODIE, United States District Judge:

Plaintiff Anthony Brian Mallgren, proceeding *pro se*, filed the above-captioned actions challenging the circumstances of his involuntary commitment in a psychiatric facility.[1] The six

---

[1] Two of these Complaints, No. 14-CV-2188 (formerly No. 14-CV-273 (N.D.N.Y.)), and No. 14-CV-2189 (formerly No. 14-CV-219 (N.D.N.Y.)), were initially filed in the Northern District of New York and later transferred to this Court. The Complaint now captioned as No. 14-CV-2709 (formerly No. 14-CV-2728 (S.D.N.Y.)) was initially filed in the Southern District of New York and later transferred to this Court.

Complaints name different Defendants but raise overlapping claims. The Court grants Plaintiff's requests to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

On May 12, 2014, this Court received a Notice of Voluntary Dismissal, dated May 1, 2014. The Notice was originally received in the Northern District on May 5, 2014 and transferred to this Court on May 12, 2014. The Notice requests dismissal of No. 14-CV-219 (N.D.N.Y.), No. 14-CV-273 (N.D.N.Y.) and seventeen other cases filed in the Northern District. In the Notice of Voluntary Dismissal, Plaintiff states that he has "noticed diminished capacity of mental faculties and would like with [*sic*] request voluntary dismissals for the following cases, finding myself not to be a credible party." (No. 14-CV-2189, Docket Entry No. 8.) He further states: "This occurred after having been treated with psychiatric medication over objection." (*Id.*) On June 6, 2014, this Court received a Motion to Consolidate, dated June 4, 2014, seeking consolidation of eighteen actions pending in the Northern District, including No. 14-CV-219 (N.D.N.Y.), No. 14-CV-273 (N.D.N.Y.), No. 14-CV-2735 (E.D.N.Y.) and another action pending in this Court. For the reasons discussed below, all of the Complaints are dismissed, with leave to file a single amended complaint within 30 days of the date of this Memorandum and Order.

**I. Background**

The six above-captioned Complaints each allege violations of due process related to Plaintiff's involuntary confinement and treatment at South Beach Psychiatric Center. Incorporating the allegations from each of the Complaints and attached documents, the Court assembles the following description of the circumstances of Plaintiff's involuntary commitment.

3

On January 17, 2014, Plaintiff was admitted as an involuntary patient to South Beach Psychiatric Center, after a 72-day imprisonment at Rikers Island. (No. 14-CV-2189, Docket Entry No. 1, at 3; No. 14-CV-2709, Docket Entry No. 1, at 6; No. 14-CV-2736, Docket Entry No. 1, at 3.) He was "involuntarily admitted [to South Beach Psychiatric Center] by medical certification of the New York State Mental Hygiene Law." (No. 14-CV-2188, Docket Entry No. 5, at 1.) On January 25, 2014, he submitted a written request to leave the facility. (No. 14-CV-2189, Docket Entry No. 1, at 3, 9.) He was informed that "South Beach Psychiatric Center does not release patients to shelters, nor do they provide for transitional living for those without income." (*Id.* at 3.) On February 21, 2014, after he was transferred to the Richmond University Medical Center for treatment, he was informed by "Doctor Greene" that he could not be discharged to transitional living residences unless he had social security benefits. (*Id.* at 5.) On March 3 or 4, 2014, Plaintiff "received notice of application for court authorization to retain a patient." (No. 14-CV-2188, Docket Entry No. 1, at 3, 5.) The application notice was signed by Clinical Director Page Burkholder. (*Id.* at 5–6.) Plaintiff submitted a written request for a court hearing, but was informed that the request must be filed by Mental Hygiene Legal Services ("MHLS"). (*Id.* at 3, 4.) Plaintiff left messages with MHLS Principal Attorney Vincent Lomangino and Joseph Traves, but had not received a response by the time Plaintiff prepared an affidavit on March 4, 2014. (*Id.* at 3.)

On or about April 11, 2014, Plaintiff received notice of a hearing for authorization for treatment over objection. (No. 14-CV-2709, Docket Entry No. 1, at 3, 22–23.) A hearing on that proceeding was initially scheduled for April 15, 2014. (*Id.* at 3, 22.) In a subsequent Complaint dated April 17, 2014, Plaintiff alleges that the hearing was scheduled for April 22, 2014.

4

(No. 14-CV-2735, Docket Entry No. 1, at 4.) On April 13, 2014, Plaintiff filed a "Notice of Removal" in this Court, purporting to remove his commitment and treatment hearing to federal court. (No. 14-CV-2709, Docket Entry No. 1, at 4.) Attached to the Complaint is a document titled "Evaluation for Treatment Over Objection," prepared by Dr. Mohammad Hashmi on April 3, 2014. (*Id.* at 14–21.) This document confirms that Plaintiff was initially admitted "on 2PC legal status," a type of involuntary admission requiring certification by two physicians attesting to the patient's need for involuntary care and treatment. (*Id.* at 14.) Plaintiff was subsequently evaluated pursuant to New York State Mental Hygiene Law § 33.03. (*Id.* at 22.) An unspecified order was entered on April 25, 2014, and "involuntary treatment by physical coercion began on 28 April 2014." (No. 14-CV-3635, Docket Entry No. 1, at 2.)

Plaintiff implies that he has not been able to effectively contest his commitment. In the affidavit dated March 4, 2014, Plaintiff alleges: "Requests for adequate access to resources necessary to properly petition the State Government, such as a public notary and legal research material, have thus far been denied." (No. 14-CV-2188, Docket Entry No. 1, at 3.) "I believe I've been denied due process in being deprived of my property and diagnosises [*sic*]. These diagnosises [*sic*], which I disagree with, are being communicated from organization to organization without my consent, nor me being provided with an opportunity to dispute and amend." (No. 14-CV-2189, Docket Entry No. 1, at 3.) Plaintiff demands "[c]hanges in state legislation requiring objective measurements and parameters concerning admission, treatment and release." (No. 14-CV-2735, Docket Entry No. 1, at 2.)

Plaintiff alleges that his medical records were shared among facilities. On February 20, 2014, "Mary" at South Beach Psychiatric Center and "Keyona" at Richmond University Medical

5

Center shared information about his "vitals," medication, and whether he "had been spoken to regarding thyroid issues." (No. 14-CV-2189, Docket Entry No. 1, at 5.) Plaintiff alleges that Doctor Sharon Greene at South Beach Psychiatric Center discussed his treatment with a doctor from Staten Island University Hospital. (No. 14-CV-2736, Docket Entry No. 1, at 4.) Plaintiff asks: "Does the Health Insurance Portability and Accountability Act of 1996 require a physician[']s basis for diagnosis to be communicated along with the diagnosis and/or for another organization to become liable for acting upon a diagnosis when passed from provider to provider without the consent of the patient?" (No. 14-CV-2189, Docket Entry No. 1, at 1.)

Plaintiff also complains about the conditions of his confinement. "The food is not up to my religious standards," which he vaguely describes, in a document titled "Finesoulian Food Preparation Guidelines," as requiring "that preparation and service be of substance, efficient and clean." (*Id.* at 3, 11.) On two occasions during his confinement at South Beach Psychiatric Facility, Plaintiff elected to fast. (*Id.* at 3; No. 14-CV-2736, Docket Entry No. 1, at 3.) On February 14, 2014, he informed officials that he would begin fasting if they did not meet his demands, including the return of his property from Rikers Island. (No. 14-CV-2189, Docket Entry No. 1, at 3.) Plaintiff began fasting on February 15, 2014. (*Id.* at 4.) The next day, he "began to vomit, asked staff about hospitalization, [and was] informed [that he] would need to wait until Tuesday, 18 February 2014 to speak with [his] therapist." (*Id.* at 4.) He temporarily began drinking water and eating, then resumed fasting on February 17, 2014. (*Id.*) On February 18, 2014, he was admitted to Richmond University Medical Center "after blood sugar was involuntarily tested." (*Id.*) He refused treatment and was involuntarily administered intravenous "saline." (*Id.* at 3–4.) On February 21, 2014, he was discharged from Richmond University

6

Medical Center back to South Beach Psychiatric Center. (*Id.* at 5.) Plaintiff states that "involuntary administration of intravenous fluids and nutrients seems unnecessary when my blood sugar level is testing at 85 while keeping fluids/solid foods down when eating; the ultimatum of eat/drink, or else, would have been sufficient." (*Id.* at 3.)

On another occasion, date unspecified, Plaintiff "elected to fast while drinking water" in order to address problems with hemorrhoidal bleeding. (No. 14-CV-2736, Docket Entry No. 1, at 3.) The Director of Services at South Beach Psychiatric Center, Gary Clemuk, gave Plaintiff "the ultimatum of consuming a minimum amount of food and/or a nutritional supplement or being hospitalized." (*Id.* at 4.) Plaintiff chose hospitalization. (*Id.*) Plaintiff was transferred to Staten Island University Hospital, where he was "involuntarily treated with intravenous fluids, believed to be a single liter of saline," and released back to South Beach Psychiatric Center. (*Id.*) The intravenous procedure caused his arm to ache. (*Id.*)

Collectively, the Complaints name the New York State Office of the Attorney General, Richmond University Medical Center, Page Burkholder, Nighat V. Sindhu, Gary Clemuk, Sharon Greene, and unspecified John Does as defendants. Plaintiff seeks "release and prevention of further involuntary treatment," (No. 14-CV-2189, Docket Entry No. 1, at 2), and an "injunction against further treatment without consent against Staten Island University Hospital," (No. 14-CV-2736, Docket Entry No. 1, at 4), which is not named as a defendant. Plaintiff also requests "removal of State proceedings to Federal court." (No. 14-CV-2735, Docket Entry No. 1, at 2.) Although he does not specify the proceedings he seeks to remove, he appears to suggest that his involuntary commitment proceedings pursuant to New York State Mental Hygiene Law should be heard in federal court. (No. 14-CV-2709, Docket Entry No. 1, at

7

2; No. 14-CV-3635, Docket Entry No. 1, at 2.) In addition, Plaintiff requests changes to state policies including "implementing healthcare audit and accountability systems," (No. 14-CV-2189, Docket Entry No. 1, at 2), "allowance of review and clarification/correction by amendment, of the information being used as a decision base," (No. 14-CV-2188, Docket Entry No. 1, at 2), and "changes in State legislation requiring objective measurements and parameters concerning admission, treatment and release . . . to allow for legal review of potential benefits," (No. 14-CV-2735, Docket Entry No. 1, at 2). In addition to injunctive relief, Plaintiff also seeks unspecified "compensation for declarative, nominal and punitive damages." (No. 14-CV-2736, Docket Entry No. 1, at 4.)

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the court must screen "a complaint in a civil action in which a prisoner seeks redress from a governmental

entity or officer or employee of a governmental entity" and, thereafter, "dismiss the complaint, or any portion of the complaint," if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A; *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Similarly, the court is required to dismiss *sua sponte* an IFP action, if the court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas*, 480 F.3d at 639.

### a. Improper Defendant

The Eleventh Amendment bars suits for damages against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself.") (internal citation omitted). Therefore, all claims against the Office of the Attorney General are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

### b. Constitutional violations

Plaintiff's invocation of due process, and allegations regarding liberty restrictions and other alleged deprivations of his civil rights may be cognizable under 42 U.S.C. § 1983. In order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct

"deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).

### i. Involuntary Commitment

Plaintiff alleges that his involuntary commitment to a mental health facility violates his right to due process. "An involuntary civil commitment is a 'massive curtailment of liberty,' and it therefore cannot permissibly be accomplished without due process of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)) (other citations and quotation marks omitted). New York State's Mental Hygiene Law governs the involuntary civil commitment of persons suffering from mental illness. *See* N.Y. Mental Hyg. Law § 9. Pursuant to New York's Mental Hygiene Law, a patient may be involuntarily committed to a psychiatric facility on a non-emergency basis if he is in need of inpatient care that is "essential to such person's welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment" and he poses "a substantial risk of physical harm" to himself or others. N.Y. Mental Hyg. Law §§ 9.01, 9.27. A dangerousness assessment must be made by a doctor. *Mittelman v. County of Rockland*, No. 07-CV-6382, 2013 WL 1248623, at *24 (S.D.N.Y. Mar. 26, 2013) ("[T]he conclusion that a patient poses a danger to himself or others must be a medical decision made by a doctor."), *appeal dismissed*, (July 18, 2013). A patient has the right to contest involuntary commitment through a state court hearing

scheduled within five days from the date notice of the request is received by the court. *Id.* §§ 9.31, 9.39(a). New York's laws permit an individual to review and challenge the accuracy of materials contained in his records, N.Y. Mental Hyg. Law § 33.16, and provides a process for sealing a patient's medical records upon a finding that the individual was illegally detained, N.Y. Mental Hyg. Law § 33.14.

Here, Plaintiff has failed to state a claim based on his involuntary commitment. Plaintiff acknowledges that he was originally retained on the basis of medical certification, and Dr. Hashmi's April 3, 2014 Evaluation confirms this. (No. 14-CV-2709, Docket Entry No. 1, at 14.) Plaintiff does not allege that the doctors who evaluated Plaintiff, including Dr. Hashmi, operated substantially below medical standards. Plaintiff appears to challenge several aspects of New York's involuntary commitment procedure itself, rather than any failure to abide by statutory procedure. (*See* No. 14-CV-2188, Docket Entry No. 1, at 1; No. 14-CV-2189, Docket Entry No. 1, at 1; No. 14-CV-2709, Docket Entry No. 1, at 1; No. 14-CV-2735, Docket Entry No. 1, at 1). New York's involuntary commitment scheme has been held to satisfy all due process requirements. *See Bryant v. Steele*, --- F. Supp. 2d ---, ---, 2014 WL 2475608, at *12 (E.D.N.Y. June 3, 2014) (New York's overall statutory scheme governing involuntary commitments has been held to "facially satisf[y] Fourteenth Amendment due process requirements." (quoting *Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 188 (2d Cir. 2005))). Because the Court finds that Plaintiff has not alleged that his involuntary commitment was imposed in violation of state procedures, Plaintiff fails to state a plausible violation of the United States Constitution. However, in light of Plaintiff's *pro se* status, he is granted an opportunity to amend his Complaint to state a §1983 claim, if he believes that he experienced a violation of state law

11

that rises to constitutional dimensions. In any amended complaint, Plaintiff should specifically identify the provisions of New York Mental Hygiene Law that he believes were violated.

### ii. Involuntary Treatment

Plaintiff also challenges his involuntary treatment. The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment. *See, e.g.*, *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). Under New York law, an adult has the right to refuse medical treatment except "in narrow circumstances, including those where the patient presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution." *Kulak v.City of New York,* 88 F.3d 63, 74 (2d Cir. 1996) (citation and internal quotation marks omitted). Courts have also approved of involuntary feeding and hydration of inmates and detainees, where other governmental interests, such as the preservation of life, prevention of suicide, and enforcement of security, order, and discipline in the facility, outweigh the constitutional rights of the individual. *See In re: Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998).

In this case, Plaintiff alleges that he was twice hospitalized and subjected to involuntary administration of intravenous fluids. However, Plaintiff fails to identify any individual involved with his involuntary treatment who acted under color of state law. Plaintiff identifies Richmond University Medical Center and Staten Island University Hospital, but does not allege that they are public hospitals or otherwise considered state actors. In order to state a valid claim, Plaintiff must plausibly alleged that the hospital or its staff members were state actors, acting in concert with state actors, or serving as an instrumentality of the state. *See e.g.*, *West v. Atkins*, 487 U.S. 42, 55–57 (1988) (private physician providing medical services to state prisoners within the

prison and under contract with the state acts under color of law); *Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir. 2000) (private hospital was not a state or municipal facility and thus was not liable pursuant to § 1983, unless it was acting as an instrumentality of the state); *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-2456, 2014 WL 1271197, at *11 n.14 (E.D.N.Y. Mar. 26, 2014) (finding that Zucker Hillside Hospital is a private hospital and Plaintiff failed to plead any facts suggesting that the hospital acted in concert with state actors); *Sykes v. McPhillips*, 412 F. Supp. 2d 197 (N.D.N.Y. 2006) (private hospital which provided emergency medical services to a prisoner at the request of correctional officers was not a "state actor" where there was no express or implied contract to provide such services, and where the hospital was federally mandated to provide such services under the Emergency Medical Treatment and Active Labor Act). Accordingly, the claims against Richmond University Medical Center and its unidentified staff members are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Although Staten Island University Hospital is not named as a defendant, Plaintiff requests an injunction against this facility to prevent "further treatment without consent." (No. 14-CV-2736, Docket Entry No. 1, at 2.) The Court notes that any potential § 1983 claims against Staten Island University Hospital and its staff would also be dismissed.

### iii. Medical records

Plaintiff alleges that medical facilities shared his patient information with each other, including information about his "vitals" and medication, and invokes the federal Health Insurance Portability and Accountability Act ("HIPAA"). HIPAA established standards for the protection of individual health information, and it allows the promulgation of regulations

13

designed to protect the privacy and accuracy of individually identifiable health information. 42 U.S.C. §§ 1320d–1320d-8. These regulations provide a process by which individuals may request amendments to the content of their records and establish procedures for accepting or denying the requested amendment. 45 C.F.R. § 164.526(b)–(d). However, HIPAA regulations are enforceable by the Secretary of Health and Human Services, and they do not provide a private cause of action through which individuals can enforce the provisions. 42 U.S.C. § 1320d-6(a)(2); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.,* 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases). Accordingly, the Complaints fail to state a claim under federal law related to Plaintiff's medical records. 28 U.S.C. § 1915(e)(2)(B)(ii).[2]

### iv. Conditions of Confinement

Plaintiff's claims related to involuntary administration of hydration fluids and his complaint that the food is not up to his religious standards suggest a claim based on inhumane conditions of confinement. Persons who are subject to civil commitment in mental health facilities are protected from inhumane conditions. *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are

---

[2] New York's Mental Hygiene Law already protects the confidentiality of patient records and provides a process for reviewing and challenging the accuracy of the records. In some circumstances, facilities may share information about patients, including when necessary to prevent imminent serious harm to the patient or client or another person, through procedures designed to ensure patient confidentiality. N.Y. Mental Hyg. Law § 33.13. Patients have the right, with some limitations, to inspect their own clinical records in the possession of such facilities. N.Y. Mental Hyg. Law § 33.16(b)–(c). The patient may challenge the accuracy of materials contained in his records by providing a brief written statement, which is then included in the record. N.Y. Mental Hyg. Law § 33.16(g). If Plaintiff believes that his rights under state law have been violated, he may raise those claims in the appropriate state forum.

designed to punish."); *Groves v. Davis*, No. 11-CV-1317, 2012 WL 651919, at *3 (N.D.N.Y. Feb. 28, 2012) (applying the Eighth Amendment standard to the Fourteenth Amendment claims of a plaintiff subject to involuntary civil commitment in a mental health facility). A claim for inhumane conditions of confinement may assert a constitutional deprivation where it alleges "unquestioned and serious deprivations of basic human needs" or denial of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In this case, Plaintiff's amorphous allegations about the standard of food preparation fail to allege a serious deprivation of basic human needs that would suggest a violation of his constitutional rights.

### III. Leave to Amend

Although it appears that Plaintiff's involuntary commitment and treatment conform to the United States Constitution, and notwithstanding Plaintiff's May 5, 2014 request for voluntary dismissal of two of the pending actions, which was followed by a subsequent request to consolidate those and other actions, the Court grants Plaintiff leave to file an amended complaint in the first-filed action in which Plaintiff requested IFP status, No. 14-CV-2189. An amended complaint would completely replace the original Complaints and must include all of the allegations Plaintiff wishes to pursue related to his involuntary commitment and treatment at South Beach Psychiatric Center. In order to bring a due process claim pursuant to 42 U.S.C. § 1983, Plaintiff must name individual defendants who could be held personally liable for the alleged deprivation of his constitutional rights. Even if Plaintiff does not know the full names of the individuals who he alleges violated his rights, he may designate "John Doe" defendants by providing identifying information, such as physical descriptions, where they are employed, and

15

the role each played in the alleged deprivation of his rights. Where available, he should provide copies of the legal documents related to the proceedings.

## IV. Frivolous litigation

Plaintiff is a serial litigant. His lengthy litigation history is recounted in this Court's July 25, 2014 Memorandum and Order in *Mallgren v. New York State, et al*., No. 14-CV-2187, slip op. (E.D.N.Y. July 25, 2014) (granting voluntary dismissal). Of the 25 cases Plaintiff has filed in this Court since January 23, 2013, with entry of this Memorandum and Order, 16 will have been dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) or for lack of subject matter jurisdiction. By Orders dated May 2, 2013, in *Mallgren v. Motion Recruitment Partners Inc., et al.*, No. 13-CV-1054; *Mallgren v. John Doe Corporation*, No. 13-CV-1265; and *Mallgren v. Bloomberg, et al.*, No. 13-CV-1466, and by Order dated March 11, 2014 in *Mallgren v. American Psychiatric Association, et al.*, No. 14-CV-2211, 2014 WL 978457 (E.D.N.Y. Mar. 11, 2014), Plaintiff was warned that the future filing of vexatious and frivolous litigation may result in sanctions, including the imposition of an injunction prohibiting him from making future filings seeking *in forma pauperis* status without leave of the Court. The Court again issued this warning on July 25, 2014, in the Court's Memorandum and Order in *Mallgren v. New York State, et al*., No. 14-CV-2187.

Plaintiff is directed to show cause, by written affirmation, within 30 days of the date of this Memorandum and Order, why the court should not bar him from filing any future complaints seeking *in forma pauperis* status, without leave of the court. 28 U.S.C. § 1651. If Plaintiff fails to show cause within the time allotted, he will be barred from filing any such actions. Plaintiff's response should be filed under separate cover from any amendment to the Complaints discussed

above.

**V. Conclusion**

The Court finds that the six above-captioned Complaints allege overlapping claims related to Plaintiff's involuntary commitment to a mental health facility. As no purpose would be served by litigating the Complaints separately, the Court directs that the actions be consolidated under docket number, No. 14-CV-2189. The other actions, No. 14-CV-2188, No. 14-CV-2709, No. 14-CV-2735, No. 14-CV-2736, and No. 14-CV-3536, shall be administratively closed.

Plaintiff's claims against the New York State Office of the Attorney General and Richmond University Medical Center are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), as are all claims related to medical records. Plaintiff shall have thirty (30) days from the date of this Order to file an amended complaint. The amended complaint must be captioned, "Amended Complaint," and shall be filed under docket No. 14-CV-2189. All further proceedings shall be stayed for thirty (30) days. Should Plaintiff wish to abandon his claims related to involuntary commitment and involuntary treatment, he may notify the Court or simply decide not to file an amended complaint within the 30 days provided for amendment.

Plaintiff's June 4, 2014 motion seeking consolidation of multiple cases he filed in the Northern District of New York and this Court is granted in part, to the extent that No. 14-CV-219 (N.D.N.Y.), No. 14-CV-273 (N.D.N.Y.), and No. 14-CV-2735 (E.D.N.Y.) are now consolidated, along with the three other above-captioned actions. Plaintiff's request to consolidate the other cases is denied.

In addition, Plaintiff must show cause, by written affirmation, within 30 days of the date of this Memorandum and Order, why the Court should not issue an injunction barring him from filing any future frivolous complaints seeking *in forma pauperis* status.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: August 5, 2014
      Brooklyn, New York